U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS
ON THE COURTS DOCKET
TAWANA C. MARSHALL, CLERK

JUN 0 8 2011

U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Chapter 11 |
| Jerry Dean Saxton | § | |
| Katie Elizabeth Saxton | § | Case No. 10-44412-RFN |
| | § | |
| American Equities Management, LLC | § | Case No. 10-44417-DML-11 |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | Under Case No. 10-44412-RFN-11 |
| | | |
| Michael N. Macris and Macris | § | |
| Enterprises, LLC | § | |
| | § | |
| Plaintiffs, | § | Adversary Case No. 10-04204 |
| | § | |
| vs. | § | |
| | § | |
| Jerry Dean Saxton and | § | |
| Katie Elizabeth Saxton | § | |
| | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE

Plaintiffs, Michael N. Macris ("Macris") and Macris Enterprises, LLC ("Macris Enterprises") (collectively "Macris") moved the Court for summary judgment that debts owed by Macris by Debtor, Jerry Saxton and Katie Saxton (collectively the "Debtors") are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6) (the "Motion"). The Motion was supported by Brief (the "Brief") and Exhibit Appendix (the "Appendix"), filed contemporaneously with the Motion. The Motion, Brief, and Appendix were filed and duly served on May 6, 2011, along with a Notice of Hearing. The Debtors filed a timely Response, Response Brief, and Response Appendix in opposition to the Motion.

On June 6, 2011, this Court heard the Motion on regular notice. Macris and the Debtors appeared through their respective counsel and presented summary judgment evidence and argument. Based upon the undisputed evidence and arguments of counsel, the Court determined that the Motion had merit and should be granted, on the terms and conditions set forth in a Final Judgment (the "Final Judgment") to be submitted contemporaneously with these findings of fact and conclusions of conclusion of law ("Findings of Fact and Conclusions of Law"), which are undisputed.

## I.

## FINDINGS OF FACT

1.      This is an adversary proceeding filed by Macris against the Debtors to determine the dischargeability of debts owed to him by the Debtors. The amount of the debt owed to Macris by Debtor, Jerry Dean Saxton, is $1,643,136, plus pre-judgment interest on $1,343,136, at the Utah statutory judgment rate, retroactive to December 4, 2009. The amount of the debt owed to Macris by

Debtor, Katie Elizabeth Saxton, is $1,543,136, plus pre-judgment interest on $1,243,136, at the Utah statutory judgment rate, retroactive to December 4, 2009.

    2.       This is a core proceeding pursuant to 11 U.S.C. §157(b).

    3.       The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334 and 157 and 11 U.S.C §523(a). This is a core proceeding pursuant to 11 U.S.C. §157(b)

    4.       The Debtors are Chapter 11 debtors in Case No. 10-44412-rfn-11 (the "Bankruptcy Case"), now pending in this Court. Thus, venue is proper in this Court.

    5.       Macris is judgment creditors in the Bankruptcy Case. A Certified Copy of the Final Judgment against Defendants Jerry Saxton, Katie Saxton, *et al.*, dated April 1, 2011 (the "Final Judgment"), is included in the Exhibit Appendix as **Exhibit "F,"** and is incorporated herein by this reference. (Appendix, pages 131-35). Before the entry of the Final Judgment, Macris filed a timely proof of claim, which was amended on September 21, 2010. The Court takes judicial notice of the Proofs of Claim.

    6.       Macris is a judgment creditor in the Bankruptcy Case as a result of wrongful acts committed by the Debtors beginning in December 2006. As a result of those wrongful acts and resulting injuries, Plaintiffs sued the Debtors in the Third Judicial District Court, Salt Lake County, State of Utah (the "Utah Court"), in a case styled, *"Michael N Macris, et al., Plaintiffs, v. Sevea International, Inc., Jerry and Katie Saxton, et al., Defendants,"* in Civil No. 070903010, before the Honorable Paul G. Maughan (the "Utah Lawsuit"). The Debtors' wrongful acts and the damages they caused are set forth in the Amended Verified Complaint, dated March 20, 2008 (the "Verified Complaint") (**Exhibit "A,"** Appendix, pages 1-44); in the Utah Court's Findings of Fact, Conclusions of Law, and Preliminary Injunction, dated May 4, 2007 (the "Preliminary Injunction")

(**Exhibit "B,"** Appendix, pages 45-64); in the Utah Court's Findings of Fact, Conclusions of Law, and Entry of Final Judgment, dated August 13, 2009 ("Findings and Conclusions") (**Exhibit "D,"** Appendix, pages 78-117), the Utah Court's Memorandum Decision on damages, dated December 4, 2009 ("Memorandum Decision") (**Exhibit "E,"** Appendix, pages 118-130), and the Utah Court's Final Judgment. (**Exhibit "F,"** Appendix, pages 129-33). Certified copies of Exhibits A, B, C, D, E, and F, are included in the Appendix and incorporated herein by reference

7.      The Debtors filed an Answer to the Amended Verified Complaint in the Utah lawsuit ("Defendants' Answer"), denying liability to Plaintiffs. See **Exhibit "C."** (Appendix, pages 64-75). On August 13, 2009, the Utah Court struck Defendants' Answer as a sanction for on-going contempt and repeated acts of discovery abuse. (Appendix, pages 101-113). When the Debtors' pleadings were stricken, the Utah Court entered a default judgment against them on factual allegations in the Verified Complaint, except for the allegations regarding the amount of Plaintiff's damages, which were resolved through a separate evidentiary hearing and specific findings. (Appendix, pages 113-15, 118-30, 132). The Utah Court also made other specific findings, which are set forth in its Orders and incorporated into the Final Judgment (Appendix, page 132).

8.      Sevea International, Inc. ("Sevea") is a Nevada corporation that was formed on or about February 10, 2006. Sevea made custom-fitting, reusable, mass-produced thermoplastic finger nails under the trademark, "Simply Perfect" Nails by Sevea and sold "Flowering Scents" personalized face and body treatments. Sevea used certain inventions, discoveries, and specialized equipment to manufacture the artificial nails. Michael Macris and the Debtors were co-owners of Sevea International, Inc. ("Sevea"). Macris owned 6,000,000 shares, as did the Debtors. Macris was the Secretary and Treasurer. The Debtors were both Directors of Sevea, and Debtor, Jerry Saxton

was the Chief Executive Officer. Katie Saxton was the Director of Marketing. (Appendix, pages 5-8, 46-48, 79-80, 132).

9. Sevea's products were sold through the development of a multi-level marketing plan utilizing distributors (the "Distributors"), who not only sold Sevea's products to the public, but also recruited and developed other Distributors who sold under them. On or about June 12, 2006, Sevea and Macris Enterprises, LLC entered into a Master Distributor Agreement, which was subsequently modified by a First Addendum to Master Distributor Agreement, dated September 12, 2006 (collectively, the "Distributor Agreement"). Macris Enterprises actively recruited Distributors, and by December 2006, there were more than 200 Distributors who had executed Distributor Agreements with Sevea. (Appendix, pages 5-8, 51-53, 80, 132)

10 Sevea was a start-up venture Gross revenue for October 2006 was $15,000. Gross revenue for November 2006 was approximately $45,000. Gross revenue for the first twenty (20) days of December 2006 was $30,000. (Appendix, pages 8, 53, 80, 132).

11. Debtor, Jerry Saxton, as a Director and Chief Executive Officer, and Katie Saxton, as a Director and employed as the Director of Marketing, had a fiduciary relationship to Sevea and owed the company duties of good faith, loyalty, and care. They were required to exercise their corporate powers solely for the benefit of Sevea and its shareholders. (Appendix, pages 8, 59, 114, 132).

12. The Debtors breached those duties. On or about December 29, 2006, the Debtors unilaterally, and without vote of the Board of Directors or a Board meeting declared that the "[h]ouse of Sevea is closed." (Appendix, pages 9, 54, 80, 132). Between January 9, 2007 and January 16, 2007, the Debtors terminated all employees of Sevea and shut down all business operations.

**FINDINGS OF FACT AND CONCLUSION OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE– Page 5**

(Appendix, pages 9, 52-54, 79-80, 132). The Debtors removed Sevea's inventory, equipment, sales materials, accounting books and records, distributor files and customer files from its former principal place of business at 2550 South Decker Lake Boulevard, West Valley City, Utah and began running the same business under a new corporation, in a new location, an office and manufacturing facility located at 2826 South Redwood Road, West Valley City, Utah. (Appendix, pages 9-10, 54-55, 79-80, 132). The Debtors continued to call "their" product "Simply Perfect" Nails. Debtors had help in misappropriating the assets of Sevea. The Debtors conspired with certain individuals, in particular Craig Gifford, Meridee Anderson, and Michael Connor, to continue the business of Sevea elsewhere in their new corporation. (Appendix, pages 8-12, 54-55, 80, 132).

13.     On May 4, 2007, the Utah Court issued the Preliminary Injunction, ordering the Debtors to return the assets of Sevea, which they did not do. (Appendix, pages 60-64). After a full evidentiary hearing, the Utah Court found that the Debtors willfully defied the Preliminary Injunction. Instead of returning Sevea's assets, and ceasing to use them for those own benefit, the Debtors removed Sevea's assets from Utah and moved them to a new location in Southlake, Texas, where they continued to do business under the name "Sevea International Productions, LLC" and continued to call their product "Simply Perfect" Nails by Sevea. (Appendix, pages 12, 80-86, 107-09, 132). The Debtors continued to disobey the Utah Court's injunctions regarding the use of Sevea's property and the prohibition on developing and delivering artificial nails. (Appendix, pages 80-86, 96-98, 107-115, 132).

14.     The Debtors' actions destroyed Sevea's business, to the detriment of the corporation and its shareholders, including Macris. (Appendix, pages106-07)  That destruction was intentional.

*Id.* Macris suffered damages as a consequence of that destruction. (Appendix, pages 13-16, 106-07, 132).

15. The Debtors procured the initiation of criminal proceedings against Michael Macris in Salt Lake City, Utah, based upon allegations that they knew to be false. On or about January 7, 2007, Debtor, Jerry Saxton, received what he viewed as a threatening voicemail message from one Dietrick Van-Nederveen. The Debtors contacted the Salt Lake City Police Department and informed the investigating officer(s) that they believed that Michael Macris was behind the threat. The Debtor told the investigating officers that Michael Macris had a drug problem and a criminal history. None of those statements was true. As a direct and proximate cause of the Debtors' false statements, a criminal information was filed against Michael Macris on April 9, 2007 in Salt Lake City, charging him with Electronic Communication/Harassment, in violation of Utah Code Ann. § 76-9-201. Based upon the false complaint, the police came to arrest Michael Macris during the Utah Court's hearing on the Preliminary Injunction. The criminal information was subsequently dismissed by the Salt Lake City prosecutors in August 2007, for lack of evidence. (Appendix, pages 28-30, 113-15, 125-26, 132).

16. The Debtors initiated the criminal proceedings against Michael Macris maliciously, without probable cause, not to pursue justice, but to injure him. The purpose of injuring Michael Macris was to deter him from prosecuting the Utah Lawsuit against the Debtor. (Appendix, pages 28-30, 115, 125-26, 132).

17. On May 16, 2007, Debtor, Jerry Saxton made untruthful and defamatory statements about Michael Macris, calling him, among other things, "a complete thief." (Appendix, pages30-31, 115, 124-25, 132). Such statements constitute slander, *per se*. The statements were willful, wanton

and malicious. Jerry Saxton made such statements for the purpose of harming Michael Macris's business reputation. (Appendix, pages 30-31, 115, 122-25, 132).

18.     Macris filed the Utah Lawsuit to seek compensation for economic injuries suffered due to the Debtors' intentional destruction of Sevea. Macris subsequently amended the Utah complaint to include new causes of action as the Debtors' committed new intentional torts Macris sued the Debtors derivatively, on behalf of Sevea, for damages suffered by Sevea due to the Debtors' breaches of fiduciary duty, conspiracy to breach fiduciary duties, and conversion of property. Michael Macris sued the Debtors in his personal capacity for damages suffered due to the Debtors' malicious prosecution, and sued Debtor, Jerry Saxton, individually for slander *per se* (Appendix, page 8-42).

19.     The Debtors were contumacious litigants. They destroyed evidence, disobeyed injunctions, and refused to cooperate with discovery. As a result of their repeated acts of contempt, the Utah Court held an evidentiary hearing on May 5-6, 2009. The Debtors were represented by counsel at the May 2009 hearing. The Utah Court listened to sworn testimony, reviewed exhibits, reviewed the case file, and considered the arguments of counsel. (Appendix, pages 78-79).

20     On August 13, 2009, the Utah Court ruled on the matters it heard on May 5-6, 2009. The ruling was memorialized in the Utah Court's Findings and Conclusions. *See* **Exhibit "D."** (Appendix, pages 78-117). In its Findings and Conclusions, the Utah Court concluded that the Debtors had committed multiple acts of contempt and discovery abuse. (Appendix, pages 107-110). The Utah Court struck their pleadings as a death penalty sanction (Appendix, pages 107-13). After striking the Debtors' pleadings, the Utah Court entered a default judgment against them on the

allegations made in the Verified Complaint and incorporated the findings of facts in the Preliminary Injunction. (Appendix, pages 113-16).

21.     Based upon the allegations made in the Verified Complaint and its findings of fact in the Preliminary Injunction, the Utah Court found that the Debtors had committed on-going wrongful acts constituting: (1) breaches of fiduciary duties owed to Sevea; (2) conspiracy to breach fiduciary duties owed to Sevea; (3) conversion of property belonging to Sevea; (4) tortious interference with business relations, (5) slander of the character of Michael Macris; and (6) malicious prosecution of Michael Macris. (Appendix, pages 78-116).

22.     The breaches of fiduciary duty owed to Sevea were breaches of a technical trust. The Debtors misappropriated corporate property of Sevea while acting as Directors and officers of the corporation, and used such corporate property for their benefit and to the detriment of Sevea and its shareholders.

23.     The Debtors committed acts of conversion and tortious interference with business relations willfully and maliciously for their own economic benefit, in the certain knowledge that Sevea and Macris Enterprises would be injured by the Debtors' tortious acts. The Debtors committed the personal torts of slander[1] and malicious prosecution willfully and maliciously in order to injure Michael Macris and his business relations. (Appendix, pages 30-31, 115, 123-25, 132). The Findings and Conclusions established the Debtors' liability, but did not quantify damages. Instead the Utah Court scheduled a future evidentiary hearing to determine Plaintiffs' damages. (Appendix, pages 114-15, 118-30).

---

[1] Debtor, Jerry Saxton personally slandered Macris  Katie Saxton did not participate in that particular tort

24. After hearing evidence of damages on September 29 and 30, 2009, the Utah Court determined the amount of Debtors' liability for damages. The Court's ruling appears in the Memorandum Decision on damages, issued on December 4, 2009. *See* **Exhibit "E."** (Appendix, pages 118-30). The amounts and components of the damages found Utah Court were as follows:

      a. $113,856 in compensatory damages, jointly and severally between the Debtors, for the destruction of Macris' interest in Sevea[2];

      b. $100,000 in compensatory damages against Jerry Saxton for slandering the character of Michael Macris;

      c. $10,000 in compensatory damages, jointly and severally between the Debtors for the malicious prosecution of Michael Macris; and

      d. Punitive damages of $1,119,280, jointly and severally between the Debtors for "misconduct [that was] "ongoing, egregious, and reprehensible."

---

[2] The Utah Court found that Sevea was worth $227,712 when the Debtors destroyed it. Macris was awarded half of that value in recognition of his 50% ownership interest. (Appendix, page 127).

**FINDINGS OF FACT AND CONCLUSION OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE– Page 10**

(Appendix, pages 125-28). The damages total $1,343,136. The Memorandum Decision did not determine attorneys' fees. (Appendix, pages 125-28).

25. The Debtors filed the Bankruptcy Case before the Utah Court heard Plaintiffs' application for attorneys' fees. Plaintiffs filed a Motion for Relief from the Automatic Stay to prosecute the Utah Lawsuit to conclusion. The Motion was granted by Order dated October 8, 2010 [Doc. No. 60] (the "Stay Order"). Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the Stay Order.

26. The Utah Lawsuit has concluded and the Utah Court has entered the Final Judgment. *See* **Exhibit "F."** (Appendix, pages 131-35) The Final Judgment liquidates Macris' claims against the Debtors in the amounts set forth therein and it makes final and appealable the findings of fact and conclusions contained in the Preliminary Injunction, the Findings and Conclusions, and the Memorandum Decision. (Appendix, pages 132-33). The damages awarded bear interest at the Utah post-judgment rate (approximately 2.4%) from December 4, 2009, until paid  (Appendix, page 133).

27. As part of the Final Judgment, the Utah Court awarded Macris reasonable attorneys' fees in the amount of $300,000 for fees, costs, and expenses incurred by Plaintiffs in obtaining findings of contempt arising from or in connection with the October 2008 and May 2009 contempt motions, investigations and hearings, and in connection with default being entered against Defendants Jerry Saxton, Katie Saxton, Michael Connor, Sevea International Productions, LLC, American Equities Management, LLC, and Angels of America, LLC on Plaintiffs' breach of fiduciary duty claims, jointly and severally. (Appendix, page 133). All attorneys' fees resulted from breaches of fiduciary or willful and malicious injuries inflicted on Macris by the Debtors.

---

**FINDINGS OF FACT AND CONCLUSION OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE– Page 11**

## II.

## CONCLUSIONS OF LAW

### A.    The Summary Judgment Standard.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 317 S.Ct. 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party has the burden of proof on all issues, and all reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-movant. *Anderson,* 477 S.Ct. at 255. However, the Court need not strain unreasonably to find fact issues. There must be more than a scintilla of evidence as to a material fact to defeat the motion. *Id.*

The movant bears the initial burden of proof. *Celotex,* 477 U.S. at 322 However, once the movant does so, the burden shifts to the non-moving party to show that a genuine issue of material fact remains. *Beard v. Banks,* 548 U.S. 521, 529 (2006). The respondent may not rest on mere allegations or denial in its pleadings, but must set forth specific evidence. *Anderson,* 477 U.S. at 249; *see also Al-Zubaidy v. TEK Industries, Inc.,* 406 F.3d 1030, 1036 (8th Cir. 2005) ("Evidence, not contentions, avoids summary judgment."). There is no genuine issue of material fact unless there is sufficient evidence favoring the non-moving party for a jury or court to return a verdict for that party at trial. *Anderson,* 477 U.S. at 249.

### B.    Legal Standard for Exception to Discharge under Sections 523(a)(4) and (a)(6).

Bankruptcy Code sections 523(a)(4) and (a)(6) provide in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

(4) for fraud or defalcation while acting in a *fiduciary capacity*, embezzlement, or larceny;

(6) for *willful and malicious injury* by the debtor to another entity or to the property of another entity;

Section 523(a)(4) refers to fraud or defalcation by a person acting in a fiduciary capacity. However, the definition of "fiduciary" for purposes of Section 523(a)(4) is narrower than the state law definition. As used in Section 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998); *R.E. America, Inc., v. Garver (In re Garver)*, 116 F. 3d 176, 179-180 (6th Cir. 1997); *Young v. Fowler Bros (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996). The trustee's obligations must have been imposed before, rather than by virtue of, any claimed misappropriation or wrong. *State Lottery Commission v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir 1998).

An express trust requires: 1) an explicit declaration of trust; 2) a defined *res*; and 3) an intent to create a trust relationship. *In re Grisham*, 245 B.R. 65, 70 (Bankr N D.Tex. 2000). A technical trust may be imposed by law. *Id.* To meet the requirements of Section 523(a)(4), a technical trust must (1) include a definable *res*, and (2) impose "trust-like" duties. The principal "trust-like" duty is to refrain from spending the trust funds for non-trust purposes. *Tran*, 151 F.3d at 343-44. However, case law has determined that the fiduciary duties owed by corporate officers and directors to the corporation meet the standard for a technical trust. *Assurance Systems Corporation v. Jackson (In re Jackson)*, 141 B R. 909, 915-16 (Bankr. N.D.Tex. 1992); *American Metals Corp. v. Cowley (In re Cowley)*, 35 B.R. 526, 528 (Bankr. D.Kan. 1983).

Sevea is a Nevada corporation. Under Nevada law, corporate officers and directors owe fiduciary duties of loyalty to the corporation. *Leavitt v. Leisure Sports Incorporated*, 734 P.2d, 1121, 1124 (Nev. 1987) ("A corporate officer or director stands as fiduciary to the corporation."). "Directors breach their fiduciary duties as they exploit an opportunity that belongs to the corporation." *Bedore v. Familian*, 125 P.3d 1168, 1173, n. 25 (Nev. 2006).

Sevea's principal place of business was in Utah. Under Utah law, corporate officers and directors owe fiduciary duties to the corporation and are forbidden to misappropriate corporate assets for their own benefit:

> Directors and officers have a fiduciary duty of loyalty to their corporation and its stockholders. [Citations omitted]. They are obligated to use their ingenuity, influence, and energy, and to employ all of the resources of the corporation, to preserve and enhance the property and earning power of the corporation, even if the interests of the corporation are in conflict with their own personal interests. This duty extends to all of the corporation's assets, including its subsidiary corporations. As this court held in *Glen Allen Mining Co. v. Park Galena Mining Co.*, 77 Utah 362, 387, 296 P. 231 (1931)·
>
> > The duty of the directors of a corporation is to further the interests and business of the association and to conserve its property. Any action on the part of directors looking to the impairment of corporate rights, the sacrifice of corporate interests, the retardation of the objects of the corporation, and more especially the destruction of the corporation itself, will be regarded as a flagrant breach of trust on the part of the directors engaged therein.

*Nicholson v. Evans*, 642 P.2d 727, 730 (Utah 1982). (*See also* Appendix, page 59). Furthermore, under Utah law, the shareholders in closely held corporations owe their fellow shareholders the same fiduciary obligations owed to a partner in a general partnership—an even more heightened fiduciary duty than that imposed in a more typical officer/shareholder relationship. *McLaughlin v. Schenk*, 220 P.3d 146, 153-54 (Utah 2009). Sevea was a closely held corporation, having only four (4) shareholders, the Debtors, Macris, and Christina McNally. (Appendix, pages 46-47). Thus, the

**FINDINGS OF FACT AND CONCLUSION OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE– Page 14**

Debtors owed direct fiduciary duties to Michael Macris, as shareholder, as well as to the corporation.

Thus, under the laws of Nevada and Utah, any misappropriation of corporate property and/or corporate opportunities by a corporate officer or director is a fiduciary defalcation within the meaning of Section 523(a)(4). *Jackson*, 141 B.R at 918-19 (*citing inter alia John P. Maguire & Co. v. Herzog*, 421 F.2d 419, 422 (5th Cir. 1970). Indeed, any willful neglect of duty by a corporate officer is sufficient for purposes of Section 523(a)(4), even if the misconduct falls short of fraud or embezzlement. *Moreno v. Ashworth (In re Moreno)*, 892, F.2d 417 (5th Cir. 1990).

Section 523(a)(6) excepts from discharge debts for willful and malicious injury by the debtor to another entity or to the property of another entity. For purposes of Section 523(a)(6), an injury is "willful" if the debtor acted with the intent to cause the injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977 (1998). The injury is "malicious" if it occurs "without just cause of excuse." *Chrysler Credit v. Perry*, 783 F.2d 480, 486 (5th Cir. 1986). "An injury to an entity or property may be a malicious injury within [the meaning of Section 523(a)(6)] if it was wrongful and without just cause, even in the absence [of] personal hatred, spite, or ill (internal citation omitted). Where an act is deliberately and intentionally done with knowing disregard for the rights of another it falls within the statutory definition of malice even if there is an absence of malice toward the particular creditor." *Baker v. Sharpe (In re Sharpe)*, 351 B.R. 409, 428-29 (Bankr. N.D.Tex. 2006).

Most of the damages awarded by the Final Judgment were punitive damages, rather than compensatory damages. However, that fact does not affect the non-dischargeability of the debt. The language of Section 523(a)(6) addresses the nature of the debtor's conduct, not the nature of the liability. Thus, all debts from a "willful and malicious injury" are non-dischargeable, including debts for punitive damages. *Stokes v. Ferris*, 150 B.R. 388, 393 (W D. Tex. 1992) *aff'd* 995 F.2d 76 (5th

1993). *See also Stanley v. Cole (In re Cole),* 135 B.R. 453, 459 (Bankr. N.D. Tex. 1992); *Norton v. Dean (In re Dean),* 79 B.R. 659, 663 (Bankr. N.D.Tex. 1987) ("Where willfulness and malice exist, then compensatory and punitive damages flowing therefrom are non-dischargeable under § 523(a)(6).") (*citing In re Adams,* 761 F.2d 1422 (9th Cir. 1985). The attorneys' fees awarded by the Final Judgment are also non-dischargeable. *Gober v. Terra + Corporation (In re Gober),* 100 F.3d 1195, 1208 (5th Cir. 1996). ("When the primary debt is non-dischargeable due to willful and malicious conduct, the attorneys' fees and interest accompanying compensatory damages, including post-judgment interest are likewise non-dischargeable.")

## C. The Facts Determined in the Utah Lawsuit Prove the Exceptions to Discharge as a Matter of Law.

The Final Judgment incorporates the Preliminary Injunction, the Findings and Conclusions, and the Memorandum Decision (Appendix, Exhibits B, D, and E) (Appendix, page 132). The Final Judgment awards $113,856 to Macris for the Debtors' breaches of fiduciary duties, conspiracy to breach fiduciary duties, conversion, and interference with contractual relations. (Appendix, pages 132-33. The Preliminary Injunction (Appendix, pages 45-65), the Findings and Conclusions (Appendix, pages 78-117), and Memorandum Decision (Appendix, page 118-30), describe the acts that constituted those particular torts. With regard to breach of fiduciary duties, conspiracy to breach fiduciary duties, and conversion of corporate property, the Debtors engaged in the following conduct: They were Directors of Sevea, and controlling shareholders. Jerry Saxton was the CEO of the corporation. The Debtors, without authorization or justification, shut down the business of Sevea, terminated the employees, misappropriated the assets, took them to a different location in Utah, and

began running the same business under a new business name -- Sevea International Productions, LLC, a Texas limited liability Company. (Appendix, pages 6-13, 53-56, 79-80). The Debtors violated numerous Orders of the Utah Court commanding them to bring back Sevea's assets and stop selling artificial nails. (Appendix, pages 79-86). To evade compliance with the Utah Court's injunctions, the Debtors moved the assets of Sevea and their business from Utah to Southlake, Texas and continued to defy the Utah Court's Orders. *Id.* The Debtors' actions destroyed the business of Sevea. (Appendix, pages 106-07). In doing so, the Debtors tortiously interfered with and destroyed the value of Macris's interest in Sevea.

The Debtors converted Sevea's corporate property for their own benefit and to the detriment of the corporation and its shareholders. Under the laws of Nevada and Utah, that is defalcation within the meaning of Section 523(a)(4). The conversion of corporate property was intentional. The harm caused to the corporation, its shareholders, and creditors (*i.e.,* the Plaintiffs) was objectively certain to occur, regardless of the Debtors' subjective motivations for causing the harm. Thus, the injuries were willful and malicious within the meaning of Section 523(a)(6). The Utah Court held an evidentiary hearing to quantify the damages. It found that Macris suffered compensatory damages to his property and business relations in the amount of $113,856. (Appendix, page 127). That debt is non-dischargeable pursuant to Sections 523(a)(4) and (a)(6).

The Final Judgment awards Macris $100,000 from Jerry Saxton, individually, for slander *per se.* (Appendix, page 132). Slander is an intentional tort. Malice is implied. One does not call another person dishonest and "a thief" without the subject intent to harm his reputation. The content of the slander is set forth in the Utah Court's finding in the Memorandum Decision. (Appendix, pages 122-25). The Court heard extensive testimony as to the slanderous statements. The Debtors

**FINDINGS OF FACT AND CONCLUSION OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE– Page 17**

were represented by counsel at the hearing and presented the testimony of an expert witness on the issue of damages. (Appendix, pages 118-19). The Utah Court found that Macris had suffered damages of $100,000. That debt is non-dischargeable pursuant to Section 523(a)(6).

The Final Judgment awards Macris $10,000 from both Debtors for the tort of abuse of process. (Appendix, page 132). The acts constituting the abuse of process are contained in the Memorandum Opinion and Verified Complaint. (Appendix, pages 28-80, 125-26). The abuse of process consisted of lying to the police to get Macris charged with a criminal offense he did not commit. The resulting injury was obviously willful and malicious. The Utah Court found that Macris had suffered damages of $10,000 due to the Debtors' abuse of process. That debt is non-dischargeable pursuant to Section 523(a)(6).

The Final Judgment awards punitive damages in the amount of $1,119,280. The Utah Court explained its reasoning:

> In this case, the Court has already repeatedly found and again confirms that the Saxton Defendants' misconduct has been ongoing, egregious, and reprehensible. They have impacted Mr. Macris' life on both personal and professional levels in a multitude of ways. They have ignored this Court's Orders and have acted with absolute impunity to this Court's directions, consistently acting in ways to hinder this process in furtherance of their own self-interests. The Court expressly finds that there is an undoubted probability of future recurrence of their misconduct. Further, the Plaintiffs have presented clear evidence of these Defendants' relative wealth. Notably, the Saxtons did not appear at the trial and did not present any evidence of their inability to pay a large award of punitive damages. Clearly, the Saxtons abused their relationship with Mr. Macris and took advantage of him to further their economic interests. Finally, the amount of actual damages is $223,856. The Court awards punitive damages in the amount of $1,119,280[3]

(Appendix, page 128). Since the punitive damages flow from the same "ongoing, egregious, and reprehensible" misconduct that gave rise to the award of compensatory damages, they are likewise

non-dischargeable. *Stokes*, 150 B.R. at 393; *Cole*, 135 B R. at 459; *Dean)*, 79 B.R. at 663. The Final Judgment awards attorneys' fees of $300,000 and pre-judgment interest at the Utah statutory post-judgment rate. (Appendix, page 133). Those amounts are likewise non-dischargeable. *Gober*, 100 F.3d at 1208.

**D.      The Debtors Have Had Their Day in Court and the Final Judgment of the Utah Court is Issue Preclusive as to Dischargeability.**

The Bankruptcy Court has exclusive jurisdiction to determine the dischargeability of debts. However, litigants may invoke the doctrine of collateral estoppels or issue preclusion to bar re-litigation of underlying facts that have been determined in another forum. *Gober*, 100 F.3d at 1201 (citing *Grogan v. Garner*, 498 U.S. 279, 284, n.11, 111 S.Ct. 654, 658 n. 11 (1991)). In deciding the issue preclusive effect of a state court judgment, federal courts look to the full faith and credit statute, which provides that "judicial proceeding of any court in any ...State... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such ...State... from which they are taken." *Gober*, 100 F.3d at 1201; 28 U.S.C. § 1738. Thus, the Bankruptcy Court looks to the law of the State that rendered the judgment. *Gober*, 100 F.3d at 1201. Since the Final Judgment was rendered in a Utah State Court, the Bankruptcy Court looks to Utah law to determine Final Judgment's issue preclusive effect.

Under Utah law, the Final Judgment, including the incorporated Findings and Conclusions and Memorandum Opinion are fully issue preclusive at to the facts determined and their legal effect

---

[3] The punitive award is not arbitrary. It is five (5) times the award of actual damages

**FINDINGS OF FACT AND CONCLUSION OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE– Page 19**

under Utah law. The Utah Supreme Court holds that issue preclusion applies when the following elements are met:

> (1) The party against whom issue preclusion is asserted must have been a party or in privity with a party to the prior adjudication;
>
> (2) The issue decided in the prior adjudication must have been identical to the one presented in the instant action;
>
> (3) The issues in the first action must have been completely, fully, fairly litigated; and
>
> (4) The first suit must have resulted in a final judgment on the merits.

*Oman v. Davis School District*, 194 P.3d 956, 965 (Utah 2008). The elements are satisfied in this action. The Saxtons are the same defendants who were defendants in the Utah Lawsuit. The issues decided in the Utah Lawsuit are the same issues presented in Plaintiffs' Dischargeability Complaints. That is, the Utah Court determined that the Debtors misappropriated property from Sevea, while acting in fiduciary capacity, and willfully and maliciously injured Plaintiffs, individually, and derivatively on behalf of Sevea, by converting corporate assets, interfering with contractual relations, slandering Michael Macris, and abusing legal process to get Macris charged with a criminal offense he did not commit. Those are the same facts that support the exceptions to discharge set forth in Sections 523(a)(4) and (a)(6). The first lawsuit ended in a final judgment on the merits. (Appendix, pages 131-35).

The only remaining issue is whether the issues determined by the Final Judgment were "completely, fully, and fairly litigated" under Utah law. They were. In Utah, a claim is "completely, fully, and fairly litigated" if the party had a full and fair opportunity to present his claim or defenses.

Whether the litigant takes full advantage of that opportunity is irrelevant. *Copper State Thrift and Loan v. Bruno*, 735 P.2d 387, 391 (Utah App. 1987).

The Saxtons had the opportunity to present their claims and defenses in the Utah Lawsuit. The case was not a "no answer" default. The Saxtons filed an answer and denied liability. (Appendix, Exhibit C, pages 64-75). There was a preliminary injunction hearing on May 4, 2007. There was a contempt hearing on December 17 and 19, 2007. There was a second contempt hearing in October 2008. There were further evidentiary hearings on May 5 and 6, 2009, and September 29 and 30, 2009. (Appendix, pages 46-50, 85) The Utah Court struck the Saxtons' pleadings after two and one-half years of litigation because of their on-going contempt of its Orders and disregard of discovery obligations. A Utah court has that authority:

> A court has the inherent authority to strike a party's pleadings and enter a default judgment if the party engages in conduct designed to improperly influence the court's decision on the merits of the case, such as perjury or obstruction of justice, or if the conduct itself tends to demonstrate bad faith or a lack of merit.

*Chen v Stewart*, 123 P 3d 416, 429 (Utah 2005). The authority to strike pleadings may be exercised as a penalty for on-going contempt of the Court's orders. *Id.* The Debtors had a full and fair opportunity to demonstrate that they were not in contempt of the Utah Court's Orders and to present their case. They simply refused to obey, despite numerous warnings, and suffered the consequences. (Appendix, pages 71-72). That fact does not deprive the Final Judgment of issue preclusive effect.

Federal courts construing Utah law in other cases have reached that same conclusion. The Tenth Circuit Bankruptcy Appellate Panel holds that "Utah collateral estoppel (issue preclusion) requirements are essentially the same as under federal law." *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 357-58 (10th Cir. BAP 2003) (*citing Frandsen v. Westinghouse Corp.*, 46

F.3d 975, 978 (10th Cir. 1995). In the Tenth Circuit, default judgments resulting from discovery abuse have issue preclusive effect. *Armstrong*, 294 B.R. at 358; *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 477 (10th Cir. BAP 1999) (finding that "a default judgment entered against a defendant for abuse of the discovery process has issue preclusive effect in subsequent litigation."). *See also Gober*, 100 F.3d at 1205-06 (Texas law).

The Debtors have appealed from the Final Judgment in Utah. Exhibit "A" to the Appendix in support of the Debtor's Response to the Motion is their Notice of Appeal Under Utah law, the Final Judgment is final for collateral purposes or issue preclusive purposes while on appeal. Like most states, Utah follows the Restatement 2nd of Judgment, Section 13, which provides that a "judgment otherwise final remains so despite the taking of an appeal." Accordingly, a Utah judgment is final for issue preclusive purposes until it is reversed or modified on appeal. *D'Aston v. Aston*, 844 P.2d 345, 351 (Utah. App. 1992). The Final Judgment is issue preclusive as the facts determined by the Utah Court and their effect under Utah law pending the resolution of the Debtor's appeal. Unless and until the Final Judgment is reversed, modified, or vacated on appeal, the Saxtons are precluded from denying the truth of the Final Judgment, including its incorporated facts and conclusions of law, or introducing contrary evidence. Those facts and conclusions of law prove conclusively the exception to discharges set forth in Section 523(a)(4) and (a)(6). A judgment will be entered excepting from discharge the debts owed to Macris by the Debtor. That judgment will be subject to reversal and modification if the Debtors prevail in their appeal from Final Judgment in Utah and timely file a request for reversal or modification based upon the successful outcome of the appeal.

All findings of facts more properly characterized as conclusion of law and all conclusions of law more properly characterized as findings of fact, will be so deemed, and vice versa.

**FINDINGS OF FACT AND CONCLUSION OF LAW IN SUPPORT OF FINAL SUMMARY JUDGMENT EXCEPTING DEBTS FROM DISCHARGE– Page 22**

**AGREED AS TO FORM:**

**BARLOW, GARSEK & SIMON, L.L.P.**

/s/ Robert A. Simon

By:_____
       Henry W. Simon, Jr.
       Texas Bar No. 18394000
       Robert A. Simon
       Texas Bar No. 18390000

3815 Lisbon Street
Fort Worth, Texas 76107
Telephone: (817) 731-4500
Facsimile: (817) 731-6200
**Attorneys for Michael N. Macris and Macris Enterprises, LLC**


**THE GIBSON LAW GROUP**

By: ___/s/ David M. Seeberger____
      David M. Seeberger
      Texas Bar No. 17979300

1801 N. Hampton Road, Suite 370
DeSoto, Texas 75115
Telephone: (972) 291-9300
Facsimile: (972) 291-0636
**Attorney for Jerry Saxton, Katie Saxton, and American Equities Management, LLC, Debtors**